# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KEVIN WHEAT,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 17-cv-02496-MMA (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 11, 14)** |

This Report and Recommendation is submitted to the Honorable Michael M. Anello, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On December 12, 2017, plaintiff Scott Kevin Wheat filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the

decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## PROCEDURAL BACKGROUND

On October 8, 2014, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning March 3, 2014. (Certified Administrative Record ["AR"] 182-85.) After his application was denied initially and upon reconsideration (AR 112-15, 119-22), plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 123-24). An administrative hearing was held on February 22, 2017. (AR 33-80.) Plaintiff appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE"). (AR 33-80.)

As reflected in his April 20, 2017 hearing decision, the ALJ found that plaintiff had not been under a disability, as defined in the Social Security Act, prior to April 17, 2017, but became disabled on that date. (AR 12-32.) The ALJ's decision became the final decision of the Commissioner on October 18, 2017, when the Appeals Council denied plaintiff's request for review. (AR 1-6.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 3, 2014, his alleged onset date. (AR 18.)

At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; a chronic pain disorder with complaints of back, neck and shoulder pain; an obsessive compulsive disorder; an anxiety disorder with panic attacks secondary to agoraphobia; a depressive disorder; attention deficit hyperactivity disorder (ADHD); and a neurocognitive disorder. (AR 18-19.)

At step three, the ALJ found that plaintiff did not have an impairment or combination

of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 20-22.)

Next, the ALJ determined that, from the alleged onset date to the date of the decision, plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 C.F.R. 404.1567(b)." (AR 22.) He further determined that plaintiff could do the following: lift and carry 20 pounds occasionally, 10 pounds frequently, stand/walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, with postural limitations including frequent balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs and ladders/ropes/scaffolds, and frequent overhead reaching with the non-dominant upper extremity. (AR 22.) He also determined that plaintiff was limited to understanding, remembering, and carrying out simple, routine, repetitive tasks, with standard industry work breaks every two hours; no interaction with the general public; and occasional work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product. (AR 22.)

For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with plaintiff's vocational profile would be unable to perform the exertional demands of plaintiff's past relevant work as a truck driver and dispatcher. Accordingly, the ALJ found that plaintiff was unable to perform any past relevant work since his alleged onset date. (AR 26.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with plaintiff's vocational profile would have been able to perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, hand packer, subassembler), the ALJ found that plaintiff was not disabled prior to April 17, 2017. (AR 26-28.) However, beginning on April 17, 2017, the date plaintiff's age category changed, the ALJ determined that plaintiff was disabled. (AR 27.)

///

## DISPUTED ISSUES

As reflected in plaintiff's motion for summary judgment, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the ALJ properly rejected the opinion of Arvin Mirow, M.D., plaintiff's treating psychiatrist, that plaintiff was extremely limited in "maintaining social functioning." (*See* ECF No. 11-1 at 5-9.)

2. Whether, assuming *arguendo* that the ALJ did properly assess plaintiff's social functional limitations, the ALJ's assessed RFC allowed for the performance of the two jobs identified by the VE at step five. (*See* ECF No. 11-1 at 9-10.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

As discussed hereafter, the Court concurs with plaintiff that reversal is warranted based on the ALJ's alleged failure to properly consider the treating psychiatrist's opinion as to plaintiff's social functional limitations. As a result of the Court's finding with respect

to that issue, it is unnecessary for the Court to reach the issue of whether the ALJ made a proper determination at step five.

Medical opinions are among the evidence that the ALJ considers when assessing a claimant's RFC. *See* 20 C.F.R. § 404.1527(b). The law is well established in this Circuit that a treating physician's opinion is entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here,[1] a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See, e.g., Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); *Magallanes*, 881 F.2d at 751; *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

Here, Arvin L. Mirow, M.D., plaintiff's treating psychiatrist since at least October 2014, provided a one-page opinion dated January 18, 2017 listing plaintiff's diagnoses and

---

[1] Here, the opinion of Dr. Mirow as to plaintiff's social functional limitations is contradicted by the opinions of the State Agency physicians, who are non-examining, non-treating physicians. (*See* AR 22-23, 25-26.)

5

symptoms, and assessing plaintiff's functional limitations.[2] Dr. Mirow diagnosed plaintiff with the following: bipolar disorder; panic disorder with agoraphobia; generalized anxiety disorder; obsessive-compulsive disorder; major neurocognitive disorder due to multiple etiologies; and ADHD. (AR 734.) He opined that plaintiff had the following "signs and symptoms": pervasive loss of interest in almost all activities; feelings of guilt or worthlessness; generalized persistent anxiety; emotional withdrawal or isolation; psychomotor agitation or retardation; difficulty thinking or concentrating; thoughts of suicide; mood disturbance; manic syndrome; and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture either both manic and depressive syndromes. (AR 734.) In addition, in assessing plaintiff's functional limitations, Dr. Mirow opined that plaintiff had "extreme"[3] difficulty in maintaining social functioning, "extreme" difficulty in maintaining concentration, persistence, or pace, and "marked" difficulty in restriction of activities of daily living. (AR 734.)

In his motion for summary judgment, plaintiff claims that the ALJ improperly rejected Dr. Mirow's opinion that plaintiff had extreme difficulty in maintaining social functioning. (*See* ECF No. 11-1 at 5-11.) In plaintiff's RFC, the ALJ limited plaintiff to "no interaction with the general public," but with respect to co-workers and supervisors, limited him only to "occasional work-related, non-personal, non-social interaction . . . involving no more than a brief exchange of information or hand-off of product." (*See id.* at 5 (citing AR 22).) Based on Dr. Mirow's opinion that plaintiff could not socially function at all, plaintiff contends that the ALJ erred in formulating plaintiff's RFC.

---

[2] The Administrative Record contains approximately 193 pages of treatment notes from Dr. Mirow, beginning in October 2014 and continuing to January 2017. (*See* AR 506-46, 610-21, 624-73, 737-36.)

[3] The form on which Dr. Mirow gave his opinion defines "extreme" impairment as meaning that "the patient cannot function at all in the listed area." (AR 734.)

In his decision, the ALJ did not accord Dr. Mirow's opinions substantial weight for two reasons, which the Court discusses below.

### A. Dr. Mirow's opinions were supposedly inconsistent with the mental status examinations in evidence.

The first reason proffered by the ALJ for rejecting Dr. Mirow's opinion was that it was "inconsistent with the mental status examinations in evidence and discussed [by the ALJ], that show primarily mild to moderate findings." (AR 24.) The ALJ elaborated that "[t]here is no evidence of record supporting the extreme mental functioning limitations set forth by Dr. Mirow." (AR 24.) He added that Dr. Mirow's "findings are not corroborated by the objective mental status examinations of record, which reflect that frequently, the claimant was oriented in four spheres with depressed mood and constricted affect. His memory was at times intact and at times impaired. Sensorium was clear. The claimant was of average intellect. His impulse control was good. Insight and judgment were fair at times and at other times good. Thought processes were logical. Thought content was unremarkable at times and at times revealed compulsions, obsessions and having to do things at an even numbered number of times. Psychomotor behaviors were hypoactive to unremarkable, and reasoning was good." (AR 24 citing AR 510, 515-16, 524-25, 614, 625-26, 630-31, 745-46.)

As an initial matter, the Court notes that the ALJ's statement that the mental status examinations in evidence show primarily "mild to moderate" findings is the ALJ's own interpretation of the findings. The treatment notes cited by the ALJ do not use the phrase "mild to moderate" to describe the findings. Thus, to the extent that the ALJ reinterpreted the raw medical data to reach a different assessment of plaintiff's condition, the ALJ was not qualified to do so. *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (recognizing that an ALJ is "not qualified as a medical expert"); *see also Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (holding that an ALJ may not substitute his layperson personal observations of claimant for the opinions of claimant's

7

treating physicians); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996) ("With few exceptions, . . . an ALJ, as a lay person, is not qualified to interpret raw data in a medical record."); *Ross v. Gardner*, 365 F.2d 554, 558 (6th Cir. 1966) ("While the Secretary may have expertise in respect of some matters, we do not believe he supplants the medical expert."); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is simply not qualified to interpret raw medical data in functional terms."); *see generally Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (ALJ is not at liberty to ignore medical evidence or substitute his own views of the medical evidence).

Furthermore, the Court notes that the *only* objective mental status examinations of record cited by the ALJ in support of this proffered reason are the treatment notes of Dr. Mirow himself. A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *see also Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with a treating physician's own treatment notes is a specific and legitimate reason to reject treating physician's opinion).

However, in this case, the ALJ failed to specifically identify the contradiction between Dr. Mirow's findings listed above and Dr. Mirow's opinion that plaintiff was extremely limited in maintaining social function. (*See* AR 734.) Moreover, a review of Dr. Mirow's treatment notes indicates that plaintiff was extremely limited in maintaining social function. His notes state that plaintiff was agoraphobic and primarily stayed home for fear of having a panic attack, which he would routinely have in both public and private. (*See, e.g.*, AR 508, 513, 519, 522, 533, 612, 617, 624, 629, 633, 655, 659, 744, 749.) His notes further indicate that plaintiff could not go to crowded places (*see, e.g.*, AR 503, 513, 519, 530, 533, 612) and was only able to leave the house one to two times per week, and

typically only if accompanied by his wife or son (*see*, *e.g.*, AR 508, 513, 522, 527, 533, 617, 624, 739; *see also* 508 (occasionally able to walk by himself in a park)). Plaintiff further reported difficulty and/or fear of going to the store or gym, dropping off his son at school, waiting in the emergency room, opening his front door, checking his mail, answering the phone, and interacting with friends or a neighbor. (*See*, *e.g.*, AR 508, 513, 519, 533, 612, 617, 624, 629, 638, 649, 655, 659, 664, 669, 744.) On one occasion, plaintiff did report going to church with his wife and "really liking the people there." (*See* AR 643, 646.) However, this appears to be the only instance of positive interaction with strangers identified in Dr. Mirow's treatment notes, and Dr. Mirow's opinion of plaintiff's social functional limitations took the interaction into consideration. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200-01 (9th Cir. 2008) (references in notes that claimant's anxiety and depression were "improving" are not "sufficient to undermine the repeated diagnosis of those conditions"); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); *Knape v. Berryhill*, No. 16-16700, 2018 WL 2473471, at *2 (9th Cir. June 4, 2018).

The Court further notes that the only opinions which contradicted Dr. Mirow's opinion on plaintiff's social functioning ability were those of the State Agency physicians, Heather Barrons, Psy.D. and Anna M. Franco, Psy.D. (*See* AR 22-23, 25-26.) Both physicians opined that plaintiff would be "moderately limited" in his ability to interact appropriately with the general public and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (AR 91.) They elaborated that plaintiff would be able to "accept supervision and interact with co-workers on a non-collaborative basis" and "tolerate brief and superficial public contact." (AR 91.) They further opined that plaintiff would not be significantly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. (AR 91.)

However, both physicians, who are non-examining, non-treating physicians, reviewed a very limited subset of plaintiff's psychiatric records. On initial review, Dr. Barrons only reviewed 2012 and 2013 records from Kaiser and two 2014 treating source statements from Barbara Lee, MFT at Psychiatric Centers at San Diego. (*See* AR 83-86.) In 2012 and 2013, plaintiff visited psychiatrists at Kaiser regarding his previously-diagnosed major depression, obsessive compulsive disorder, anxiety disorder, and panic disorder with agoraphobia to discuss his medications. (AR 494-501.) At the time, plaintiff was employed and in overall stable condition. (AR 494-501.) As such, one psychiatrist noted that plaintiff would have no more than slight impairment in social functioning. (*See* AR 496.) On reconsideration, Dr. Franco reviewed an additional 41 pages of treatment records from Psychiatric Centers at San Diego, which included 25 pages of Dr. Mirow's treatment records. (*See* AR 97-103.) However, neither State Agency physician reviewed any of Dr. Mirow's treatment notes from the second half of 2015, 2016, the beginning of 2017, or the January 2017 opinion itself.

As the ALJ noted in his decision, plaintiff's condition reportedly worsened over time. (*See* AR 20-21.) For example, in 2014, plaintiff was given a GAF score of 60. In 2015, however, plaintiff received a GAF score of 43 and 55, and in 2016, he received GAF scores of 40 and 44. (*See*, *e.g.*, AR 488, AR 539, AR 511, AR 520, AR 651, AR 640.) Thus, Dr. Mirow's opinion is arguably more probative than earlier opinions. *See Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985) (where the claimant's "condition [is] progressively deteriorating, the most recent medical report is the most probative"); *see also Magallanes*, 881 F.2d at 754-55 ("Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports.").[4]

---

[4] Moreover, the Court notes that shortly after Dr. Mirow's opinion in January 2017, as soon as plaintiff reached a new age category on April 17, 2017, the ALJ determined that he was disabled. (AR 27.)

Based on the foregoing, the Court finds that the ALJ's first reason for rejecting Dr. Mirow's opinion as to plaintiff's social functional limitations was legally insufficient.

**B.  Plaintiff's self-reported activities were supposedly inconsistent with Dr. Mirow's opinions.**

The second reason proffered by the ALJ for rejecting the opinions of Dr. Mirow was that they were inconsistent with "plaintiff's self-reported activities in the function report of record." (AR 24.)  Among other things, the ALJ noted that plaintiff reported that he "can drive a car and can go out alone." (AR 25, citing AR 237.)  The ALJ also noted that plaintiff reported that he could shop in stores for food, follow instructions, and get along well with others, including authority figures.  (AR 25, citing AR 237, 239-40.)

Plaintiff submitted a "Function Report" dated October 30, 2014.  (AR 234-42.)  In the report, plaintiff reported that his anxiety and panic attacks "stop [him] at times from being able to leave [his] house" for "fear of socializing" and "fear of a panic attack." (AR 234.)  He reported that he can no longer take his family out to eat, spend time with friends, socialize, and do physical activities.  (AR 235.)  Plaintiff also reported that he can drive a car, and go shopping for food, which he does three times a month for ten minutes at a time. (AR 237.)  Sometimes he needs his wife to go shopping with him.  (AR 237.)  Plaintiff reported that he does not have problems getting along with people, including authority figures, but that he also does not spend time with others or socialize.  (AR 238-40.)

On February 5, 2015, plaintiff submitted another "Function Report," which was not cited by the ALJ.  (AR 244-51.)  In this report, plaintiff reported that his "mental health condition affect[ed] [his] ability to talk or be around people due to [his] anxiety and agoraphobia." (AR 244.)  Plaintiff reported that his ability to go outside was "very limited" due to his agoraphobia, and when he would go out, he could not go out alone and needed his wife to accompany him.  (AR 247.)  Plaintiff further reported that his wife did the shopping.  (AR 247.)  Plaintiff reported spending time with his family and his hobbies included playing video games with his son and watching television.  (AR 248.)  Plaintiff

further reported that his condition affected getting along with others and that he did not see his friends very often due to his anxiety. (AR 249.) He also reported that he got along "fine" with authority figures. (AR 250.)[5]

Based on the foregoing, the Court cannot discern an inconsistency between Dr. Mirow's opinion that plaintiff had extreme impairment in social functioning and the function reports submitted by plaintiff. Plaintiff consistently reported difficulty leaving the house, particularly alone, and almost no social interaction for fear of panic attacks. Although plaintiff reported that he could get along with others, including authority figures, it also appears that following the exacerbation of plaintiff's illness, he did not – and could not – interact with anyone but his immediate family (*i.e.*, his wife, son, and daughter), his doctors, and occasionally someone at the grocery store. Accordingly, the Court finds that the ALJ's second reason for rejecting Dr. Mirow's opinion as to plaintiff's social functional limitations also was legally insufficient.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the

---

[5] In two third party Function Reports, dated October 31, 2014 and March 4, 2015, submitted by plaintiff's wife, she corroborated plaintiff's function reports. She similarly highlighted the decreasing ability over time of plaintiff to leave the house, particularly alone. In March 2015, she stated that due to her husband's mental illness, "he [could not] go out by his own because of his anxiety and agoraphobia." (AR 253.) She added that he "seldom" goes outside, except for doctor's appointments, and that he has a hard time going out alone without her along. (AR 254, 256-57.) She stated that she does all the shopping. (AR 256.) She noted that his condition affects him getting along with others, but also noted that he does not have a problem getting along with family, friends, neighbors, or authority figures. (AR 258-59.) The ALJ found that her "recorded observations [we]re consistent with [plaintiff's] disability function report and testimony." (AR 24.)

Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See id.*

Dated: August 14, 2018

ROBERT N. BLOCK
United States Magistrate Judge